The United States Court of Appeals for the First Circuit is now in session. All persons having any business before this honorable court may give their attendance and they shall be heard. God save the United States of America and this honorable court. Today's cases will be called as previously announced and times will be as allotted to counsel. The first case today is Jeremias Lucas Domingo-Mendez v. Merrick B. Garland, appeal number 21-1029. Attorney Kaplan, please introduce yourself for the record and proceed with your argument. Thank you. Good morning, your honors, and may it please the court. My name is Michael Kaplan and I represent the petitioner, Mr. Jeremias Domingo-Mendez, in this case. If I may, I would like to reserve two minutes for rebuttal. Yes, you may have it. Thank you, your honor. The main issues before this court this morning are whether the Board of Immigration Appeals inappropriately engaged in fact-finding and whether the board failed to adequately evaluate the immigration judge's factual finding using the clearly erroneous standard as prescribed by law. We respectfully submit that the answer to both of these questions is yes. In their decision, the board contradicted several key facts relied upon by the immigration judge in her decision. Today, I plan to draw the court's attention to four of those main discrepancies. First, that the petitioner's ability to work in Guatemala as a cook, whether he'd be able to find that or not. Second, the economic impact of the petitioner's removal on his qualifying relatives, his two U.S. citizen children. Third, the condition that the children would be subjected to if they were to join the petitioner in Guatemala. And fourth, the impact of the COVID-19 pandemic on the forced separation should his removal be affected. I'd like to turn first the court's attention to whether or not the petitioner, the respondent before the immigration court, would be able to work as a cook within Guatemala. Mr. Kaplan, before you go there, the government says that we have limited jurisdiction in this case. That we may review issues of law, but that we may not get into any of the discretionary determinations. And that ultimately, the BIA decision is a discretionary decision. And that most of the arguments you make actually go to the exercise of their discretion. So, before you launch into your argument, could you respond to the government's contention? First, do you agree that the jurisdiction is limited to issues of law? I would agree, yes. But we would contend, Your Honor, that there is an issue of law in this case because the BIA, the board, inappropriately engaged in fact-finding. I'm sorry. You need to spell that out. Just because the BIA looks at facts differently than the IJ did and evaluates them differently does not create an issue of law. So, please, what exactly is the issue of law? Of course, Your Honor. So, the issue here is that the board didn't just accept the factual findings of the immigration judge and re-weigh that evidence to reach a new conclusion or a new discretionary determination. Here, the contention is, and as I would point out to the court, the contention is that the board found new facts, re-weighing the underlying evidence, and created new findings that were separate and different from the immigration judges, which is an error of law as this court has held. Four minutes remaining. And several courts around the country as well. The issue presented by Tecuri, which is a case that this court decided last year, is entirely different from the issue presented to the court this morning. In Tecuri, which this court decided didn't have jurisdiction to review those discretionary findings by the board, in that case, the board accepted and clearly stated, or explicitly or implicitly, that the factual findings of the immigration judge were agreed upon by the board and made a different discretionary determination after re-weighing. I just wanted to ask you a distinction between two possibilities, and I fully understand the distinction you're drawing between accepting the facts of the IJ and then weighing them in the discretionary calculus, which you're saying we don't have jurisdiction to consider. But I want to be clear about two different possibilities of what could have happened here that's distinct from that. And you tell me whether we have to decide between those two, or whether either one of them is an error of law. The first would be the board is clear that it's not accepting the finding of the IJ because it thinks the IJ's fact-finding was clearly erroneous. And so it's coming to a different factual conclusion. So that's possibility one. And my question is, is that a legal question which we can review? The second possibility is the board does not purport to be saying that the IJ clearly erred in its facts. Instead, it purports to be accepting the facts by the IJ in its weighing of them. But it misdescribes the fact found by the IJ, simply erred in saying that that's the fact found. Is that second one an error of law? And which of the two are you saying happened here? Thank you, Your Honor. It's a great question. So both happened here is our contention, Your Honor. And we would argue that both are a matter of law that is before this court. Maybe just to be precise on it, taking the restaurant example first. Yes. Is that a case of both happening? One of those two happening? And if so, which of the one of the two happened? So looking at the restaurant example, Your Honor, we would contend that here the immigration court, the immigration judge reached a factual finding that the board then reached a separate and different factual finding. So that would be, I believe, the first scenario, if I remember the two options correctly that Your Honor presented. Basically, the immigration judge in her decision found that based on all the testimony, both from the petitioner in this case, from his partner, the country conditions, all of the evidence weighed by the immigration judge led to the conclusion that it would be exceptionally difficult for him to find work as a cook in his home country of Guatemala. The board on the other side contradicted that and found that he would be able to find work as a cook in Guatemala. In doing that, did the board say that the IJ clearly erred? They did not, Your Honor. So why wouldn't it be possible to read the board there as simply misdescribing what the IJ found, which would seem to me to be a legal problem if it thought it was weighing facts that don't exist? Sorry, continue, Your Honor. My only concern is whether it's clear under the law that a re-weighing of a fact or re-weighing of the record in a determination that the IJ clearly erred is in fact a legal determination that we can review. Maybe it is, I'm just not sure that there's authority that makes that clear. Whereas I would have thought it fairly clear that if the board thinks it's relying on the facts found by the IJ, and it's just plain that it's not, then it would make sense to re-mend because the BIA is weighing facts that it mistakenly thought were found that weren't. Correct, Your Honor. So what we would argue is that both situations are occurring simultaneously here, where the immigration judge and the board reached different conclusions, but that the board believed mistakenly that they were relying on the immigration judge's conclusions, that he wouldn't be able, in this specific instance, to find work. Okay, all right. You have two minutes reserved for later. Thank you. Thank you, Your Honors. Attorney Kaplan, if you could please mute your audio and your video, and Attorney Hogan, please introduce yourself on the record to begin. Good morning. May it please the Court, Brendan Hogan for the government. In this case, the review petition should be dismissed. With regards to the incorrect standard of review, the counsel says the board applied here. That's not correct. The board cited the correct standard of review. It cited the correct regulation. It understood the difference between clear erroneous and an overview, and when both should be applied. It relied on the immigration judge's and its summary of the hardship evidence provided by the petitioner, and it simultaneously provided record citations to the petitioner's testimony and evidence supporting the immigration judge's factual findings. This demonstrates that the board reviewed the immigration judge's factual determinations and didn't dispute any of them, and accepted them all as found by the immigration judge. And the regulation doesn't require the board to state it's in agreement with the facts. It implicitly accepted them is basically what happened in this case. And then you need to address Judge Barron's question, and specifically about their seeming disagreement with the IJ as to whether he could get a job in the restaurant industry. You know, it could be they accepted his finding, but then mischaracterized it. Could be that they accepted his finding, but thought in the overall context it really wasn't very significant. But you are going to have to address Judge Barron's question, please. Yes, Your Honor, and it would be the latter. It would be that the board accepted the overall findings, but found that they weren't significant enough to reach a degree of hardship that would be required for a grant of relief in this case. And it's worth pointing out that the petitioner and his spouse, I guess they were at odds about how they thought he would be able to obtain employment in Guatemala because the petitioner in this case said, I can work as a cook and our restaurant's near. Well, I'll be living in my own home and I'll be able to work there. It was petitioner's spouse who said, I don't think that's true. I think we'll have to be relegated to doing agricultural work. And in making that finding, the board cited to the petitioner's testimony. So it didn't engage in fact finding. It just pointed out something that was present in the record and relied on it to find that there was no hardship. Well, let me if the issue is, is it reasonably likely he could find work in Guatemala? And the IJ were to say he could not. Listening to his testimony and the wife's testimony, I find as a matter of fact that he would not likely be able to find work as a cook. I don't think that are you contending that the board could then say, well, we've looked at the testimony and we reach a different factual conclusion. We conclude he could get work. I don't think the board could do that under its regs. Could it? It could not. But in this case, that's not respectfully. That's not what happened. Because so. So it seems to me we have an agreement in principle. It's then the application to this particular case. You're you. You construe what the board said as. As the same as the IJ, so we didn't make a different factual find. That is correct. There was no rejection of facts and there was no conflicting or misrepresentation of facts. But then here's here's my problem. The BIA said, I quote, petitioner believes he would be able to obtain restaurant work. The IJ finding was the petitioner believes he might be able to obtain work. And then the IJ listed reasons why that was unlikely. Those seem to me to be pretty different things. Well, again, you're looking at the totality of the evidence or record as a whole. There was no documentary evidence in this case regarding likelihood or ability to gain employment in Guatemala. All I thought I thought you accepted the principle that even if the record was ambiguous, once the IJ makes a supported factual finding for which there is substantial evidence in the record, the BIA cannot engage in de novo review of that intentionally or unintentionally. That is correct, your honor. But again, looking at the very meager testimony in this case, the board determined that even accepting that is true. It doesn't rise to the level you're shifting to reviewing the record. I think what just kind of saying is there is a finding about that record by the IJ. And that finding is not that he would find work, but that although he might be able to, it was not likely he would. The BIA then says he would find work. So while it may be the case that the record would support the finding that the IA made, I think just got his point is that's not the finding the IJ made about that record. So the board's not free to recharacterize the probability. What's your answer to that? But the board can still look at facts that are in the record. It's not fact finding to look at petitioner's own testimony. But the board. If the IJ says it is not likely he'll find work. The board has to accept that probability of him finding work, doesn't it? Yes, your honor. But again. So the question is, did it hear if it said that he would find work without ever saying it was not likely that he would? I'm sorry, could you repeat that, your honor? Four minutes remaining. The board accepted the IJ's assessment of the likelihood. And the IJ said it was not likely he would find work. And the BIA said he would find work without ever saying it was not likely he would. I believe what the immigration judge found was that it was not likely he would find comparable work. Not that he would be without employment at all. And in that context, on page four of the record, the second page of the board's decision, it understood that there would be a diminution of economic circumstances. But the evidence presented in this case just didn't rise to the level of the requisite hardship. Maybe I'm assumptive. I thought the board's finding was that he would find restaurant work. Is that not what the board said? I believe. Well, going back first to the immigration judge's decision, I think what he was trying to say was that there were going to be comparable work, not that he would be wholly without work in Guatemala. And I think that's what then the board then cited to. And at page four of the record, it's the second page of the board's decision. It understood there would be a diminution of economic circumstances that, yes, he would have less income or not comparable employment. But the testimony in this case, which is the only evidence regarding the economic circumstances of petitioner, just didn't rise to the requisite level. That's an over review, which the board may do. Did I correctly read your brief as challenging as you have here today, the contention he's making? But did I fairly read your brief as not raising any issue of failure to exhaust? Exhaust which issue, your honor? On the issue we're talking about. Well, for the fact finding, he wouldn't be able to exhaust that before the board just because he he wouldn't be aware of what the board's going to rule before it issued it. So that is a legal question whether this that this court can review. But it's not colorable under the facts of the circumstances of this case. Thank you. I just have one further question, which just in some immigration cases, the parties have taken advantage of our camp program. Where the equities were such that it wasn't evident. Why exactly the government was pursuing the underlying action to remove the person from the country. I'm just curious, has there been consideration of that possibility in this case? Months ago, the government approached Petitioner's Council about whether they were interested in prosecutorial discretion. One of the things we asked for was a disposition of some of the pending criminal charges that were in the record. And we were told that they would approach the Department of Homeland Security on their own. I've kept tabs with the Department of Homeland Security about that, and they have told me several times, the most recently being the beginning of this week, that petitioner never filed a request for prosecutorial discretion. But if I understand that the government remains open to that possibility, if the petitioner is? I would be happy to mediate with the Department of Homeland Security, but I can't personally offer anything to Petitioner's Council. Thank you. Does the panel have any other questions? I just want to be clear, because I'm going to ask your colleague this question. It strikes me there are two different, albeit they may be related, methods of possible resolution of this case, which would lead to our court at least not issuing a decision to allow for possible resolution. One is the request for exercise of prosecutorial discretion through the Department of Homeland Security, which you say you were open to, but the petitioner has never taken the steps needed to accomplish that. The other is for us to refer this to the CAMP program. Would a referral to the CAMP program in any way be helpful as to the first process, or would the first process be helpful as to the CAMP program? And if we were to give a period for resolution and withhold decision, should we basically allow for both possibilities here? I think that would be fair, Your Honor. Personally, I'm not sure mediation would be beneficial in that the government's already approached Petitioner's Council about this, but if the court thinks it's beneficial, the government would be willing to participate. And again, I'd be willing to facilitate with Homeland Security to discuss prosecutorial discretion. Thank you. I appreciate the government's flexibility. Now we'll see whether Petitioner has similar flexibility in mind. Thank you, Your Honor. Thank you, Attorney Hogan. Please mute your device at this time. Would Attorney Kaplan please unmute his device and reintroduce himself on the record? You have a two-minute rebuttal. Good morning again, Your Honor. It's Michael Kaplan again for the petitioner in this case. Mr. Kaplan, you've heard the discussion. We're giving you a chance to work with the government on a voluntary resolution through two different mechanisms. Are you interested in doing that? We would be, Your Honor. The petitioner would be interested in availing itself of any of the programs that the court has mentioned, either the CAMP program or prosecutorial discretion. I would note that we only recently received the disposition in the criminal case. The case had been dismissed, and so that had been the reason for the delay in the prosecutorial discretion request. But the petitioner is currently putting together that request to submit to the Department of Homeland Security. There are several different elements that are required to compile before it can be submitted, and it takes some time, and that's why there's been that delay. But we are proceeding on that to take advantage of that opportunity, Your Honors. And how long will it take you to file that application now that you have the state court disposition? Your Honor, I'm not familiar with how much evidence we currently already have for the packet. It's being handled by another attorney in my office. However, I would say that we can usually provide those as long as we have all the information required fairly quickly, within a few weeks to a month. Well, Mr. Kaplan, I'm going to urge you to make a commitment that you and your office will do it within the next three weeks. Do you think you can make that commitment to us? Yes, Your Honor. I think that that would be fair and reasonable. All right. Now, Judge Barron. Yeah, I just have one question. I just wanted to follow up on the comment on the merits about the would versus the likely would not. If I understood the government correctly, it's suggesting that the BIA's opinion is not a conclusion that's inconsistent with the IJ's because it's not a finding about he would find the same restaurant work that the IJ was discussing. It was just a statement that he would find work, I guess, of some kind, which it then says there's no inconsistency with what the IJ said inherently. What's your answer to that? My answer, Your Honor, to that would be that we'd be left basically guessing what the board meant by their sentence. Reading the decision, it's clear that they feel that in their decision that the petitioner would be able to find work. They mentioned that he believes he would find work as a cook. There's no mention of whether he would find work. When you say as a cook, does the BIA refer to work as a cook? I believe so, Your Honor. Restaurant work, restaurant work, not specifically as a cook, but they do say restaurant work. They do not mention agricultural work or any other. Okay, so if my colleagues agree, I'm going to suggest that we take advantage of both parties' willingness to attempt to resolve this matter. We refer you to the CAMP program. We also understand that you will file an application for prosecutorial discretion within the next three weeks. It seems to me that under those circumstances, we would defer any decision, but we would like a status report from the parties as to those two efforts. Shall I say a status report within six weeks? Is that feasible? I'm sorry, Your Honor, were you directing that question to me or both of us? To you. Yes, six weeks should be feasible, Your Honor. Thank you. I'd like to hear from government counsel. Yes, Your Honor, we'd be able to do that within six weeks, a status report. Okay. Or a litigation, if you were to order that, too. Well, I've just said we are referring you to the CAMP program. Okay, so if my colleagues, I believe I have the sense of the court, but if they would like to modify anything I've said, now is the time for them to speak. Well, we'd be just issuing an order after ensemble, so I think we could just figure it out at that time what the order should say. Okay. All right. Okay. All right. Thank you very much, counsel. We appreciate the flexibility on both sides. Thank you, Your Honor. Thank you, Your Honor. That concludes argument in this case. Attorney Kaplan and Attorney Hogan should disconnect from the hearing at this time.